## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM DARRELL PETREY** | : | **Case Number: 1:23-cv-490** |
| c/o Barron, Peck, Bennie & Schlemmer | : | |
| 3074 Madison Rd. | : | **Judge:** |
| Cincinnati, Ohio 45209 | : | |
| | : | |
| And | : | |
| | : | |
| **ANTHONY THOMAS** | : | |
| c/o Barron, Peck, Bennie & Schlemmer | : | |
| 3074 Madison Rd. | : | |
| Cincinnati, Ohio 45209 | : | |
| | : | |
| Plaintiffs, | : | |
| -vs- | : | |
| | : | |
| **THE CITY OF WILMINGTON** | : | |
| The City of Wilmington Municipal | : | |
| Building | : | |
| 69 N. South St. | : | |
| Wilmington, Ohio 45177 | : | |
| | : | |
| And | : | |
| | : | |
| **MARK McKAY** | : | |
| **(official and individual capacity)** | : | |
| 69 N. South St. | : | |
| Wilmington, Ohio 45177 | : | |
| | : | |
| And | : | |
| | : | |
| **CHIEF RONALD FITHEN** | : | |
| **(official and individual capacity)** | : | |
| 69 N. South St. | : | |
| Wilmington, OH 45177 | : | |
| | : | |
| | : | |
| Defendants. | : | |

---

## VERIFIED COMPLAINT FOR DECLARATORY,
## INJUNCTIVE, AND MONETARY RELIEF WITH JURY DEMAND

---

Plaintiffs William Darrell Petrey and Anthony Thomas state the following for their Complaint against Defendants City of Wilmington, Mark W. McKay, and Ronald Fithen:

## INTRODUCTION

1. This is an Action under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, as well as common, to seek damages for the unlawful restraint, retaliation, and malicious prosecution of two citizens for engaging in protected critical speech of their elected officials during public participation during a Wilmington City Council meeting. Plaintiffs Petrey and Thomas peacefully attempted to petition their government with grievances when Defendants interrupted them, and then used facially unconstitutional council rules to restrain protected criticisms of elected officials. Defendants then arrested and retaliated against both Plaintiffs when they attempted to assert their rights under the First Amendment to criticize their mayor for his conduct in office. Defendants' actions were maliciously and purposely intended to punish and threaten further protected speech.

## PARTIES

2. Plaintiff Anthony Thomas ("Thomas") is a resident of Wilmington, Ohio, and he lives in Clinton County, Ohio.

3. Plaintiff William Darrell Petrey ("Petrey") is a resident of Wilmington, Ohio, and he lives in Clinton County, Ohio.

4. Defendant City of Wilmington ("Defendant") is a public body located in Clinton County, Ohio.

5. Defendant Mark McKay (Defendant "McKay") was the president of Defendant's Council during the relevant time period, and he was the final decisionmaker

with the power to silence speech during meetings. He is named here in both his official and individual capacities.

6. Defendant Chief Ronald Fithen (Defendant "Fithen") is Defendant's Police Chief. Defendant Fithen is the highest law enforcement official in Wilmington, and he is the final decisionmaker regarding arrests. He is named here in both his official and individual capacities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all Defendants because this Action is brought under 42 U.S.C. § 1982 and 42 U.S.C. § 1988, and this Action is brought primarily under federal law. All state claims are subject to this Court's ancillary jurisdiction because the facts supporting these claims arose under the same transactions and occurrences of the federal claims.

8. Venue is proper here because the transactions and occurrences addressed in the Complaint occurred in Clinton County, Ohio.

## BACKGROUND INFORMATION

9. Both Plaintiff Petrey and Thomas are outspoken critics of multiple elected officials within Defendant's government.

10. The Plaintiffs both became more interested in their local government after the suspicious death of a woman named Casey Pitzer.

11. Casey's father has believed and advocated that her death was not an accident, and the two Plaintiffs have helped advocate for further investigation.

12. Both Petrey and Thomas believe that Wilmington Police Department (the "Wilmington Police") have mishandled the investigation for numerous reasons,

and they have made many critical statements regarding the handling of the investigation.

13. Like many Americans, both Petrey and Thomas have engaged the community on social media to communicate their criticisms of the Defendant's leadership.

14. Petrey and Thomas are critical on Facebook of Mayor John Stanforth (the "Mayor") and Law Director Brett Rudduck.

15. During the early spring, the Mayor, who is Republican, was engaged in a reelection campaign.

16. The Republican primary was set for May 2, 2023.

17. Clinton County and Wilmington are very Republican areas, and winning the Republican primary frequently results in a simple general election.

18. Therefore, the primary elections in Clinton County are as important, if not more important, than the general election.

19. Up until the meeting-at-issue, Petrey and Thomas were attending Council meetings, and they were making critical statements.

20. Likewise, Greg Pitzer, Casey Pitzer's father, also attended meetings and made critical statements.

21. In addition, another citizen, Jane Tuke-Johns ("Tuke-Johns"), also would come to meetings and make critical statements during public participation.

22. Defendants' Council members and government leadership have stated their animosity towards Petrey and Thomas, as well as the public's critical use of social media concerning government leadership.

23. Like most small governments, Defendant has a segment of its meeting where members of the public may address Defendant's Council and address concerns

4

they have about the community. These rules are posted on Wilmington's website, and they state the following.

1. People who want to speak to Council are asked to sign in prior to or during meeting. When signing in, please include name, address, email address, and discussion topic.
2. All speakers must present from the podium and remarks **should be directed to City Council as a whole** (**rather than to any particular member of Council**). Remarks should not be directed to any member of staff or other audience members. **Members of Council and Staff should be referred to by title and/or department**.
3. Members of the audience may not join City Council discussion from their seats in the audience. If recognized by the President of Council, a member of audience may be invited to speak at the podium during the City Council discussion if the President of Council believes their comments are necessary or helpful for the City Council to continue their discussion or make their decision.
4. During the Public Comments portion of the meeting, each speaker is limited to one period of three minutes. The President of Council or Clerk of Council will notify the speaker when three minutes are up. Meeting attendees may not "donate" their speaking time to another person.
5. If the speaker has documents they wish to share with City Council that support their comments, they must present these items to the Clerk of Council for distribution.
6. The Public Comments period of the meeting is provided for the public to share information and views, not to engage Council or anyone else in conversations or debate. The three minutes is strictly for the speaker to share their thoughts.
7. In many cases, the speaker may be directed to meet with staff to resolve issues or get their questions answered.
8. If a **speaker's content** is deemed disruptive (e.g., **demeaning to others**, includes profanity, etc.) the President of Council may terminate the person's remaining time immediately.

(Exhibit 1, emphasis added).

24. Based on the foregoing, Defendant restrains and forbids public comments that are personally directed about one public official.

25. Defendant further restrains speech it finds "demeaning" to its elected officials.

26. On April 20, 2023, Thomas and Petrey attended the City Council meeting for the City of Wilmington.

27. At the meeting, they both attempted to petition their government with grievances during the public participation portion of the Council meeting.

28. Before they spoke, Tuke-Johns addressed the Council, and she made critical statements. (See https://www.youtube.com/watch?v=zj00NRKiqF8 at 30:03).

29. Tuke-Johns criticized the code enforcement officer. (Id.)

30. Tuke-Johns exceeded three minutes.

31. At the end of her comments, Tuke-Johns expressly demanded the termination of the code enforcement officer. (Id. from 30:00-30:46).

32. Thus, Defendant permitted a woman to personally direct comments at a staff member, who was not up for reelection, and to do so for over the allotted three-minute time without restraint.

33. However, when the two male Plaintiffs criticized the Mayor for his conduct, things went very differently.

34. Thomas was the first of the two Plaintiffs to speak, and he is wearing a white shirt in the video. (Id. at 49:19).

35. When Thomas began to speak, he did not threaten any member of the Council or the audience with physical violence or use any other fighting words. *Id.*

36. Thomas did not use any vulgar or obscene words. *Id.*

37. Thomas is only seen and heard uttering certain comments that are critical of the Mayor's decisions. *Id.*

38. In fact, he only really criticized the government's decisions regarding the use of taxpayer dollars relating to a cleaning product, and the Mayor's comments about other matters. *Id.*

39. The President of Counsel, Defendant McKay, then gaveled Thomas, and he told Thomas that he is not permitted to make these critical statements that are directed towards the Mayor personally. *Id.*

40. Defendant McKay referred to these critical comments as "attacks" against the Mayor.

41. However, they really were just criticisms about the manner the Mayor spends money, and the Mayor's conduct in office.

42. Thus, the "attacks" against the Mayor directly addressed the Mayor's official conduct and matters of public concern.

43. The President then asked Thomas if he wanted to be removed, and Thomas agreed to leave because McKay already told him that he could not continue making critical statements about the Mayor. *Id.*

44. After Thomas was already gaveled and told he could not personally direct criticisms about the Mayor, Thomas uttered something about a Nazi on his way out because Thomas regarded Defendant's censorship as anti-freedom.

45. Defendant Fithen then arrested Thomas.

46. Defendant Fithen then explained to the audience that Thomas was removed and arrested for critical speech aimed at the Mayor.

47. Defendants then threatened the speech of every other person in the audience, and Defendant Fithen told the audience he would arrest anyone who verbally criticized the government. (Id. at 50:29).

48. Chief Fithen expressly stated that citizens did not have the right to verbally attack the government, so there is no doubt that he arrested Thomas for the critical content of his speech.

49. Another citizen blurted out comments at this point to Defendant Fithen, and that citizen was removed but not arrested.

50. Petrey then came to the lectern, and he attempted to speak while wearing a black T-shirt.  (Id at 51:39).

51. Petrey began talking. (Id.)

52.  Petrey also did not threaten anyone physically or engage in fighting words. *Id.*

53. He said nothing vulgar or obscene, and he did not scream. *Id.*

54. Once Petrey began to criticize the Mayor for his decisions and conduct, Defendant McKay banged his gavel and told Petrey to stop his critical speech. (Id. at 52:40).

55. When Petrey tried to continue making critical statements, Defendant Fithen absurdly pointed at Petrey and shouted "jail." (Id. at 52:45).

56. Therefore, during the April 20, 2023, Council meeting, Defendants used viewpoint-based Rules of Participation to restrain critical viewpoints and retaliate against those critical viewpoints.

57. These two Defendants said nothing that actually caused any disruption in the meeting.

58. The audience was silent when they spoke.

59. Nobody began to fight.

60. The audience did not heckle their comments.

61. No chairs were flipped, and there was no disorder.

62. If anything, the Defendant McKay and Defendant Fithen were more disruptive because they gaveled peaceful criticism, made threatening speeches, shouted jail, argued with the speakers, and ultimately arrested two men for expressing critical viewpoints.

63. Indeed, the former Clinton County Sheriff, Patrick Haley ("Haley"), was in the audience.

64. Haley was the Clinton County Sheriff for eight years, and he also briefly served as a Clinton County Commissioner. (See Exhibit 2, the Affidavit of Pat Haley).

65. Haley has both law enforcement and local government experience.

66. According to Haley, in his professional experience, Thomas and Petrey did not disrupt the meeting, and they did nothing that amounted as cause for an arrest. (Id.)

67. Nonetheless, Defendant filed malicious criminal complaints against both Petrey and Thomas for disturbing a public meeting under R.C. § 2917.12 for doing nothing other than petitioning their government with grievances in a peaceful and non-violent manner.

68. R.C. § 2917.12 (the "Statute") states the following:

> (A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
>
>> (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
>>
>> (2) Make any utterance, gesture, or display which outrages the sensibilities of the group.
>
> (B) Whoever violates this section is guilty of disturbing a lawful meeting. Except as otherwise provided in this division, disturbing a lawful meeting is a misdemeanor of the fourth degree . . .

69. The Statute consequently gives a public body the unbridled discretion to punish and retaliate against viewpoints the government finds offensive to its "sensibilities."

70. Aside from its vagueness and overbreadth, the Statute permits government to treat critical viewpoints as being intentionally disruptive merely because those statements outrage their collective egos.

71. This is precisely what occurred here.

72. The affidavits and criminal complaint made it abundantly clear that Defendants arrested both Thomas and Petrey because of their critical speech that was directed at Defendant's Mayor, who was seeking reelection in only a couple weeks afterwards. (See criminal complaints and affidavits attached as Exhibit 3).

73. In addition, the Defendant's own dispatch, Terri Ahrmann Murphy ("Dispatch Murphy"), taunted the Plaintiffs after their arrest.

74. In fact, Dispatch Murphy made a Facebook post where she displayed Plaintiffs' mugshots and wrote "Alright! DONE! Jail!" with a laughing emoji. (Exhibit 4).

75. This post exhibits that it was a goal to arrest and punish these critics of the Wilmington Police, and it further exhibits Defendant's malicious intent.

76. Defendant maintained this malicious prosecution for almost four months before Defendants finally dismissed these malicious claims only several days ago on July 28, 2023.

77. Defendants intentionally and maliciously caused Plaintiffs to incur attorney fees defending themselves against these malicious claims.

78. Defendants caused both Plaintiffs emotional damage arising from having to face bogus claims meant to intimidate and punish them for exercising their Constitutional rights by making critical comments about matters of public concern.

79. The Mayor did not win the primary election, which was likely why Defendants McKay and Fithen wanted to punish Plaintiffs' critical speech.

80. The Defendants had the final decision-making authority to punish Plaintiffs, and they did so according to Defendant Wilmington's policies.

## COUNT I

## 42 U.S.C. § 1983 - First Amendment Facial Challenge—Free Speech

### Against All Defendants in All Capacities

81. Plaintiffs restate all previous paragraphs.

82. Under the First Amendment of the United States Constitution, laws cannot restrain or punish speech based upon viewpoints.

83. The Sixth Circuit has already expressly held that rules of public participation that prohibit personally-directed speech are unconstitutionally viewpoint based as a matter of law. *Ison v. Madison Local School Dist*., 3 F.4th 887 (6th Cir. 2021).

84. The Sixth Circuit has held that Rules that regulate "abusive" and "antagonistic" speech are facially unconstitutional.

85. Here, Defendant City's Rules of Public Participation facially restrain speech that is personally directed and "demeaning."

86. These Rules facially discriminate against protected viewpoints, and these Rules are consequently unconstitutional.

87. R.C. § 2917.12 regulates viewpoints because it makes it a criminal offense to make any utterance that outrages the sensibilities of a government board during a public meeting.

88. Consequently, if any person expresses any viewpoint during a public meeting that hurts the government's feelings, the government has the unbridled discretion to criminally charge that person.

89. This viewpoint-based restraint facially violates the First Amendment because it restrains and punishes viewpoints based upon the listener experiencing offense because of those viewpoints.

90. Moreover, the Statute is unconstitutional because it runs afoul of the overbreadth doctrine.

91. Although there are theoretically some circumstances where the Statute might restrain fighting words, the Statute is clearly capable of restraining and criminalizing protected criticisms of elected officials.

92. Here, Defendants used these unconstitutional rules and the Statute to arrest and punish Plaintiffs for making critical statements about the Mayor while he was campaigning for reelection.

93. This Statute was directly utilized to punish a viewpoint on matters of public concern, which included no fighting words.

94. Plaintiffs are entitled to injunctive relief, declaratory judgment, attorney fees, costs, and compensatory and nominal damages.

## COUNT II

## 42 U.S.C. § 1983 - Fourteenth Amendment Facial Challenge—Due Process

### Against All Defendants in All Capacities

95. Plaintiffs restate all previous paragraphs.

96. Statutes violate the Fourteenth and First Amendments when they are facially vague.

97. R.C. § 2917.12 is vague because "outrages the sensibilities" is a subjective standard providing the government listener with the unbridled discretion to determine what constitutes a violation of the Statute.

98. The potential criminal speech, and whether that speech is unlawful, is completely dependent on the "sensibilities" of the government, which can have different outcomes in different meetings depending on the particular emotional fragility of any particular government body.

99. There is no objective standard that a speaker can determine what he can and cannot say to not face possible arrest.

100. Here, the vagueness of this Statute was apparent because Defendants used this Statute to retaliate against Plaintiffs for merely criticizing the official conduct of an elected official.

101. Plaintiffs are entitled to injunctive relief, declaratory judgment, attorney fees, costs, and compensatory and nominal damages.

## COUNT III

### 42 U.S.C. § 1983 - First Amendment– Retaliation and Restraint

### All Defendants in all Capacities

102.    Plaintiffs restate all previous paragraphs.

103.    Defendants applied the law to Plaintiffs in a manner to retaliate and restrain their critical viewpoints.

104.    There is ample notice to public officials that they cannot arrest and retaliate against people for criticizing government officials.

105.    There is also ample notice from *Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021) that a government cannot silence speech merely because it is personally directed and/or abusive.

106.    Nonetheless, Defendants maliciously ignored their Constitutional duties to not retaliate against Plaintiffs for critical speech about their elected officials regarding matters of public concern.

107.    Defendants were not acting in the public's interest, but they were rather acting in bad faith to retaliate against their political critics.

108.    Defendants intended to humiliate and emotionally harm Plaintiffs.

109.    Defendants had the final decision-making authority to restrain and punish Plaintiffs, and they abused that power.

110.    Defendants damaged Plaintiffs, they humiliated them intentionally, and they caused them emotional damage.

111.    Plaintiffs are entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, and costs against all Defendants, as well as punitive damages against the individual Defendants.

14

## COUNT IV

## 42 U.S.C. § 1983 - Fourth Amendment - Malicious Arrest, Malicious Prosecution, and Unlawful Seizure of Person

### All Defendants in all Capacities

112.    Plaintiffs restate all previous paragraphs.

113.    Defendants seized the person of both Plaintiffs without probable cause to retaliate against them for protected speech.

114.    Defendants unlawfully arrested Plaintiffs without probable cause.

115.    No reasonable government official would believe he had the ability to arrest a citizen for nothing more than criticizing a mayor for his official conduct.

116.    Indeed, Defendants did not even have the power to silence Plaintiffs' speech under the precedent in *Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021), let along arrest Plaintiffs for that speech.

117.    Defendants were not protecting the public.

118.    On the contrary, Defendants maliciously seized Plaintiffs for their critical comments about the government.

119.    Defendants acted in bad faith, and with a conscious disregard for Plaintiffs' rights.

120.    Defendants damaged Plaintiffs.

121.    Plaintiffs are entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, and costs against all Defendants, as well as punitive damages against the individual Defendants.

## COUNT V

### False Arrest

#### All Individual Defendants in Their Individual Capacities

122.    Plaintiffs restate all previous paragraphs.

123.    Defendants had no lawful authority or probable cause to arrest or otherwise confine Plaintiffs.

124.    Regardless, Defendants intentionally restrained, arrested, and confined Plaintiffs.

125.    Plaintiffs were aware of their arrest, and they did not consent to their arrest.

126.    Defendants acted maliciously and in conscious disregard of Plaintiffs' rights.

127.    Defendants damaged Plaintiffs.

128.    Plaintiffs are entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT VI

### Malicious Prosecution

#### All Individual Defendants in their Individual Capacities

129.    Plaintiffs restate all previous paragraphs.

130.    Defendants had no lawful authority or probable cause to arrest or otherwise confine Plaintiffs.

131.    Regardless, Defendants filed charges against Plaintiffs.

132.    Defendants acted maliciously and in conscious disregard for Plaintiffs' rights.

133. As a result, Plaintiffs suffered damages apart from their initial arrest.

134. Defendants damaged Plaintiffs.

135. Plaintiffs are entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT VII

### 42 U.S.C. § 1983 - Fourteenth Amendment – Gender Discrimination

### Against All Defendants in All Capacities

136. Plaintiffs restate all previous paragraphs.

137. Before Plaintiffs were arrested, Jane Tuke-Johns used public participation to directly criticize a staff member and demand that employee's termination.

138. Tuke-Johns exceeded her permitted speaking time, and Defendants did not stop here.

139. Tuke-Johns personally directed her critical speech, and Defendants did not restrain her speech, and they did not arrest her.

140. Tuke-Johns is a woman.

141. Plaintiffs are men.

142. Defendants arrested Plaintiffs for critical statements that were personally directed, but Defendants did not lift a finger when a woman engaged in the same conduct.

**WHEREFORE**, Plaintiffs respectfully requests that this Court finds for them and awards them the following relief:

a. An order enjoining R.C. § 2917.12 and Defendants' Rules for Public Participation;

b. An order declaring that R.C. § 2917.12 is unconstitutional and Defendants' Rules are unconstitutional;

c. An order enjoining the County Defendants from continuing to unlawfully arrest Plaintiffs;

d. An Order declaring that Plaintiffs' arrest was unconstitutional;

e. Compensatory damages;

f. Nominal damages;

g. Attorney fees;

h. Costs and expenses;

i. Punitive damages against the Defendants in their individual capacities; and

j. All other relief this Court deems proper under law or equity.

*/s/ Matt Miller-Novak*
Matt Miller-Novak, Esq. (0091402)
Barron, Peck, Bennie, &
Schlemmer, Co. LPA
3074 Madison Road,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax: 513-721-2301
MMN@BPBSLaw.com

Attorneys for Plaintiffs

Through Counsel, Plaintiffs demand a jury for all issues entitled to be tried in front of a jury.

*/s/ Matt Miller-Novak*

**VERIFICATION**

I verify that the facts contained within this Complaint are true to the best of my knowledge and belief under penalty of perjury and with personal knowledge.

_____
William Petrey

This verification was signed before me on this 31st day of July 2023, in Hamilton County, OH.

_____
Notary

19