# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| **WILLIAM DARRELL PETREY, et al** | : | **Case Number: 1:23-cv-00490** |
|  | : |  |
|  | : | **Judge: Douglas R. Cole** |
| Plaintiffs, | : |  |
| -vs- | : |  |
|  | : |  |
| **CITY OF WILMINGTON, et al** | : |  |
|  | : |  |
| Defendants. | : |  |

---

## PLAINTIFFS' MOTION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Plaintiffs Anthony Thomas and William Darrel Petrey move this Court for a temporary restraining order and preliminary injunction to enjoin Defendants from continuing to enforce facially viewpoint-based Rules that discriminate against protected viewpoints. A Memorandum in Support of this Motion is attached.

Respectfully Submitted,


*/s/ Matt Miller-Novak*
Matthew Miller-Novak (0091402)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

## **MEMORANDUM IN SUPPORT**

This is an Action where a local government used viewpoint-based Rules of Public Participation to restrain and retaliate against speech that criticized its Mayor John Stanforth (the "Mayor") in violation of the First Amendment of the United States Constitution. Defendant City of Wilmington has rules regulating speech during its meetings that facially discriminate against protected viewpoints and violate the First Amendment.

### I.   INTRODUCTION[1]

Plaintiffs Anthony Thomas ("Thomas") and William Darrell Petrey ("Petrey") (collectively "Plaintiffs") are residents of Wilmington, and they are vocal critics of Defendant City of Wilmington ("Defendant") its Mayor, and its Police Chief Ronald Fithen.  On April 20, 2023, Thomas and Petrey attended Defendant's City Council meeting.  At the meeting, they both attempted to petition their government with grievances during the public participation portion of the Council meeting, which is a limited public forum. Defendant Wilmington, Defendant Mark McKay ("McKay"), and Defendant Chief Ronald Fithen ("Fithen") arrested them for making critical comments about the Mayor.

Wilmington has rules for the citizen participation portion of its meeting, which restrain speech that is critical of Wilmington's public officials.  These rules are posted on Wilmington's website, and they state the following.

1. People who want to speak to Council are asked to sign in prior to or during meeting. When signing in, please include name, address, email address, and discussion topic.
2. All speakers must present from the podium and remarks **should be directed to City Council as a whole (rather than to any**

---

[1] All Facts in this Motion rely upon Plaintiffs' Verified Complaint.

**particular member of Council**). Remarks should not be directed to any member of staff or other audience members. Members of Council and Staff should be referred to by title and/or department.

3. Members of the audience may not join City Council discussion from their seats in the audience. If recognized by the President of Council, a member of audience may be invited to speak at the podium during the City Council discussion if the President of Council believes their comments are necessary or helpful for the City Council to continue their discussion or make their decision.

4. During the Public Comments portion of the meeting, each speaker is limited to one period of three minutes. The President of Council or Clerk of Council will notify the speaker when three minutes are up. Meeting attendees may not "donate" their speaking time to another person.

5. If the speaker has documents they wish to share with City Council that support their comments, they must present these items to the Clerk of Council for distribution.

6. The Public Comments period of the meeting is provided for the public to share information and views, not to engage Council or anyone else in conversations or debate. The three minutes is strictly for the speaker to share their thoughts.

7. In many cases, the speaker may be directed to meet with staff to resolve issues or get their questions answered.

8. If a **speaker's content** is deemed disruptive (e.g., **demeaning to others**, includes profanity, etc.) the President of Council may terminate the person's remaining time immediately.   (Complaint; Exhibit 1) (Emphasis added).

Defendant Thomas was the first of the two Defendants to speak, and he is wearing a white shirt in the video.[2]  When Thomas began to speak, he did not threaten anyone with physical violence or other fighting words.  Thomas did not use any obscene words. Thomas is only seen and heard uttering certain comments that are critical of the Mayor's decisions regarding the use of a certain cleaning product.  In fact, he only really criticized the Mayor's decisions regarding the use of taxpayer dollars.  As the President of the Council, Defendant McKay, then gaveled Thomas, and he told Thomas that he is not

---

[2] https://www.youtube.com/watch?v=zjooNRKiqF8 at 49:14).

permitted to make these critical statements about the Mayor. Defendants then arrested Thomas.

After Thomas was arrested, Wilmington then threatened the speech of every other person in the audience. Defendants threatened that they would arrest anyone who verbally criticized the government to chill and restrain further critical speech.[3]

Eventually, Defendant Petrey began talking.[4] Defendant Petrey also did not threaten anyone physically. He said nothing obscene, and he did not scream. Once Petrey began to criticize the Mayor for his decisions and conduct, the Defendants McKay and the Police Chief arrested Petrey for his critical comments.

Moreover, nothing that the two Plaintiffs said caused any disruption in the meeting. The audience was silent when they spoke. Nobody began to fight. The audience did not heckle their comments. No chairs were flipped, and there was no disorder. In fact, the former Sheriff of Clinton County, Patrick Haley, was in the audience, and he has testified on Plaintiffs' behalf in an affidavit that Plaintiffs were not disruptive, and there was no cause to arrest them. (See the Affidavit of Patrick Haley, attached to the Complaint as Exhibit 2).

Defendants arrested both Plaintiffs based upon facially-viewpoint based rules of public participation that give Defendants the power to restrain and punish critical viewpoints about elected officials. The Defendants have finally dismissed these malicious claims after damaging Plaintiffs for months. However, Defendants are still maintaining these unlawful Rules. Plaintiffs, and the rest of the public, must continue to live in fear of viewpoint-based retaliation.

---

[3] *Id.* at 50:29
[4] Id at 51:39.

## II.    LAW AND ARGUMENT

This Court should immediately enjoin Defendants' unlawful Rules for Public Participation because they facially empower the Defendants to restrain and punish speech merely because it is critical of one elected official.   When deciding whether to issue a preliminary injunction, courts determine the following: (1) whether a plaintiff has a strong likelihood of success on the merits of her action; (2) whether a plaintiff would suffer irreparable injury without the injunction; (3) whether issuing the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997).   These "are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).   The degree of proof necessary for each factor depends on the strength of the other factors. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996).

### A.  Plaintiffs are Likely to Succeed on the Merits.

Defendants' Rules of Public Participation are facially viewpoint-based restraints on protected speech.   As the Supreme Court has held, "[g]iving offense is a viewpoint," *Matal v. Tam,* 137 S.Ct. 1744, 1763 (2018), and viewpoint-based restraints cannot be salvaged for constitutional purposes by a viewpoint-neutral justification.   *See Reed v. Town of Gilbert,* 576 U.S. 155, 165-66 (2015) (holding that "an innocuous justification cannot transform a facially content-based law into one that is content neutral").

It is black-letter law that content- and viewpoint-based restrictions on expression are analyzed under strict scrutiny, which places the burden on the government to justify its restriction.   *See, e.g., Reed*, 576 U.S. at 171.  Content-based restrictions are presumed

5

unconstitutional and only upheld when the government establishes that the rules impose the least restrictive means necessary to achieve a compelling government interest. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). While the government does retain some interest in an orderly meeting, that interest is hardly compelling. *See, e.g.*, *Zapach v. Dismute*, 134 F.Supp.2d 682, 692 (E.D. Pa. 2001) (cataloguing cases holding that government interest in orderly meetings is legitimate and substantial, but not compelling). Viewpoint discrimination is so offensive to the First Amendment that courts have held it unconstitutional even in non-public forums. *See, e.g., Burnham v. Ianni*, 119 F.3d 668, 676 (8th Cir. 1997) (en banc) (holding that it is not "constitutionally valid" to curtail speech in a limited public forum simply because "other persons on the [] campus object[] to [the speaker's] viewpoint").

While not in the context of public meetings, the Supreme Court's three recent pronouncements on content and viewpoint discrimination – *Reed*, 576 U.S. 155; *Matal*, 137 S.Ct. 1744; and *Iancu v. Brunetti,* 139 S.Ct. 2294, 2294 (2019) – further hamper the government's ability to restrain speech based on its offensiveness or disparaging nature. In *Reed*, the Supreme Court struck down a sign ordinance which included exceptions and variable standards depending on whether the sign was political, elections-oriented, or bore some other non-commercial message. *Reed*, 576 U.S. at 159-63, 172.

In *Matal*, 137 S.Ct. 1744, the Court invalidated a prohibition on the issuance of trademarks that disparage living or dead persons. *Id.* at 1751. While the Court noted the unique nature of trademark protection, which confers governmental protection on private expression for a fee, it heavily analogized to limited public forum case law in analyzing the viewpoint-based nature of the restriction. *Id.* at 1761-64. As a starting point, the Court imposed broad restrictions on the regulation of viewpoints. *Id.* at 1763. And the

disparagement restriction, it noted, discriminates based on viewpoint, because causing offense is itself a viewpoint. *Id.*

Next, in *Iancu v. Brunetti*, 139 S.Ct. 2294 (2019), the Court prohibited viewpoint-based judgments that separate speech based on the message it conveys, even if no speech is silenced as a result. There, the Court invalidated the Lanham Act's prohibition against the registration of trademarks deemed "immoral or scandalous." *Id*. at 2297.

Following the Supreme Court's clear pronouncements in *Matal*, *Iancu*, and *Reed*, the Sixth Circuit Court of Appeals issued two significant decisions clarifying the hallmarks of viewpoint discrimination in speech restrictions in public forums. The first such case was *AFDI v. Sub. Mobility Auth. for Regional Transp.*, 978 F.3d 481, 498-504 (6th Cir. 2020). At issue in *AFDI* was the constitutionality of a restriction, applicable to public bus stops, on "political" advertisements and ads bringing "scorn or ridicule" to a particular group. *AFDI*, 978 F.3d at 485. In striking down both provisions, the Sixth Circuit held that the "scorn or ridicule" provision was impermissibly viewpoint-based. *Id*. at 500.

Shortly after it decided *AFDI*, the Sixth Circuit issued *Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021).[5] In *Ison*, the court considered whether prohibitions on "antagonistic," "abusive," and "personally directed" speech at school board meetings were unconstitutionally viewpoint-based. *Id*. at 893. Holding in the affirmative, the court credited the dictionary definitions and common meaning of the words in observing that they essentially prohibited speech that offended or was in opposition to the school board. *Id*. at 894-5. And it held that *Matal* and *Iancu* controlled the analysis with regard to First Amendment viewpoint discrimination. *Id*. See the following excerpt:

---

[5] Plaintiffs' Counsel, Matt Miller-Novak was Counsel for Plaintiffs in *Ison*.

> The antagonistic restriction, by definition, prohibits speech opposing the Board. *See Antagonistic*, Merriam-Webster ("showing dislike or opposition"). And abusive prohibits "insulting" language, *see Abusive*, Merriam-Webster ("harsh and insulting"), with "personally directed," meaning simply abusive speech directed at one person...

Therefore, **the Sixth Circuit has expressly held that a government body cannot regulate speech in its public participation section even when that speech is "personally directed," "insulting," "antagonistic," "abusive," "harsh," or "insulting**." A speaker is not properly restrained because he is insulting the government. And a speaker is not "disruptive" because he is abusive or offensive. And it is not proper to forbid viewpoints that are directed at one public official because personally directed speech is a protected viewpoint.

Here, Defendants' Rules of Public Participation used to punish Plaintiffs are facially unconstitutional for the same reasons as those in *Ison*. Defendants' Rules for Public Participation forbid speakers to direct their criticisms to an individual elected official precisely like the unconstitutional rules in *Ison*. And Defendants' Rules expressly regulate speech that Defendants believe is "demeaning" even though the Sixth Circuit held in *Ison* that a government cannot even restrain "abusive" speech.

This Court should enjoin these Rules, so Defendants cannot use them to punish Plaintiffs' speech.

### B. Immediate relief is needed to stop irreputable harm.

Plaintiffs are no longer facing malicious prosecution. However, the Plaintiffs need immediate relief, so they have the option to speak critically without punishment. Moreover, since the Defendants have threatened to arrest the entire public, this Court should invalidate these Rules, so the First Amendment rights of the rest of the public is not chilled by these Rules.

**C. Injunctive relief will not harm third parties.**

Enjoining Defendants will not harm parties before the Court. On the contrary, it will help third parties not before the Court. Members of the public should feel safe to petition their government with grievances.

**D. Public policy favors immediate action.**

It is always in the public's best interests to stop violations of the Constitution. And it is particularly in the public's best interest to protect the public from punishment for criticizing government officials in a peaceful manner.

## III. CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court finds enjoins Defendant Wilmington from continuing to enforce its viewpoint-based Rules for public participation.

Respectfully Submitted,

**_/s/ Matt Miller-Novak_**
Matthew Miller-Novak (0091402)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com
Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I certify that I served this Motion, along with the Verified Complaint, on Defendants' Counsel on this 1st day of August 2023.


### ***/s/ Matt Miller-Novak***